## INHABITANTS OF UNITY *vs*. INHABITANTS OF BELGRADE.

### Waldo.   Opinion October 15, 1884.

*Paupers.   Marriage.   Insane person.   R. S., c.59, § 2; c. 60, § 1.*

By the provisions of R. S., c. 59, § 2, no insane person is capable of contract-ing marriage; and by R. S., c. 60, § 1, the marriage of an insane person when solemnized in this state is absolutely void.

When, in the trial of an action for the recovery of pauper supplies, the validity of an alleged marriage becomes material, it may be impeached by proving the insanity of one of the parties thereto, when the marriage was solemnized in this state.

ON EXCEPTIONS.

Assumpsit to recover for pauper supplies furnished to Julia A. Jackson and her three children.

At the trial the plaintiffs introduced evidence of a marriage between Julia A. Jackson and one Gustavus A. Farnham whose settlement was admitted to be in the defendant town, whereupon the defendants were permitted to introduce evidence, against the plaintiffs' objections, tending to prove that at the time of the marriage Farnham was insane.   And the presiding justice instructed the jury that if they found that Farnham was insane at the time the marriage ceremony was performed, the marriage would be void, and the plaintiffs could not, for that reason, maintain this action.

To this ruling and instruction, the verdict being for the defendants, the plaintiffs alleged exceptions.

*William H. Fogler*, for the plaintiffs.

It is not competent to question the validity of a marriage on account of the insanity of one of the parties in the trial of a collateral issue, such question can be determined only in a process instituted for the purpose of testing such validity.   See definition of marriage in *Adams* v. *Palmer*, 51 Maine, 480.

The relation is *publici juris*.   A decent regard for the rights of others, for the peace of mind of the parties to the marriage,

:for the good name of children begotten by parents under the :sanction of proper and lawful marriage ceremonies, demand that this question should not be made a foot-ball by contesting :litigants, but that a marriage, duly solemnized according to the laws of the state, should be held sacred until the subject has been judicially investigated and the fact established by the proper tribunal, and in the way provided by the statute, for the government of all parties for all time.

The expediency, at least, of the method of procedure for which the plaintiffs contend is declared by the elementary writers. 2 Greenl. Ev. § 464, note 2 ; 2 Kent, 77.

Although the marriage of a lunatic is absolutely void without any decree of nullity in Massachusetts, yet, the question whether lunacy existed to an extent to annul the marriage, can not be raised collaterally. The fact must be decided in such a way as to be fixed for all purposes and for all parties.

The same provision is made by the statute of New York.

In this state the question has not been judicially decided. In *Atkinson* v. *Medford*, 46 Maine, 510, the question was not raised, or discussed, or decided.

It is an open question. The court is called upon first to determine what is right; what is salutary ; what is for the good order of society, and the peace of mind of all persons who enter into the bonds of matrimony.

If it is best for the public, best for the parties concerned, that the validity of a marriage shall be questioned and brought into controversy, incidentally, to be decided in one way in one cause, and the contrary in another suit ; that the social *status* of parents should be thrown into doubt, and the legitimacy of children brought into discredit, at the will of litigants, and left in doubt and discredit, even after the decision of the cause in which the question is raised, then, of course, the ruling of the judge at *nisi prius* must be sustained.

*Baker, Baker and Cornish,* for the defendants, cited : 1 Bish. Mar. and Div. § § 105 (49), and cases cited, 124, 125, 136 ; *Ferlat* v. *Gojon,* 1 Hop. Ch. 478 ; S. C. 14 Am. Dec. 554 ;

*Gathings* v. *Williams*, 5 Ired. 487; S. C. 44 Am. Dec. 49, and note, p. 54; *Elliott* v. *Gurr*, 2 Phillim. 19; 1 Black. Com. p. [524], [526], [527]; *Jenkins* v. *Jenkins Heirs*, 2 Dana, (Ky.) 103; S. C. 26 Am. Dec. 437; *Foster* v. *Means*, 1 Speer's Eq. 569; S. C. 42 Am. Dec. 332; *Wightman* v. *Wightman*, 4 Johns. Ch. 343; *Crump* v. *Morgan*, 3 Ired. Eq. 91; S. C. 40 Am. Dec. 447; *Powell* v. *Powell*, 18 Kansas, 371; S. C. 26 Am. Rep. 774; note to *Gathings* v. *Williams*, 44 Am. Dec. 55, and cases; R. S., c. 59, § 2; R. S., c. 60, § 1; note to *Jackson* v. *King*, 15 Am. Dec. 368; see *Wiser* v. *Lockwood*, 42 Vt. 720; *Middleboro'* v. *Rochester*, 12 Mass. 363; *Mountholly* v. *Andover*, 11 Vt. 226; S. C. 34 Am. Dec. 685; *Goshen* v. *Richmond*, 4 Allen, 460; *Atkinson* v. *Medford*, 46 Maine, 510.

VIRGIN, J. As no person can contract a valid marriage when incapable of giving an intelligent consent thereto, the marriage of an insane person, though formally solemnized, is a nullity. *Middleboro'* v. *Rochester*, 12 Mass. 363; *Atkinson* v. *Medford*, 46 Maine, 510; 1 Bish. Mar. & Div. (5th ed.) §§ 105 and 125; Sch. Dom. Rel. 25, 29. Moreover the statute expressly provides, not only that, "no insane person is capable of contracting marriage," (R. S., c. 59, § 2) but also that such a marriage, "if solemnized in this state, is absolutely void." R. S., c. 60, § 1. And as the law, in the absence of any statutory requirement, does not require so useless a ceremony as that of annulling, by a special proceeding, a marriage which has no existence, but is absolutely void *ab initio*, its invalidity may be shown in any proceeding, in any court whenever the question arises collaterally. Sch. Dom. Rel. 24; 1 Bish. Mar. & Div. *supra; Gathings* v. *Williams*, 5 Ired, 487; S. C. 44 Am. Dec. 49, and note, p. 54.

Such has been the invariable practice in this court ever since the separation. Thus in an action for the recovery of pauper supplies, the plaintiffs were permitted to impeach the validity of an alleged marriage of the female pauper, by showing that the marriage was solemnized by a minister at his own house, neither of the parties residing in that town as required by st. 1786, c.

·3 ; *Ligonia* v. *Buxton,* 2 Maine, 102. So, in a similar action, proof was allowed that a former husband of a married woman was still living when she married another man. *Pittston* v. *Wiscasset,* 4 Maine, 293 ; *Harrison* v. *Lincoln,* 48 Maine, 205 ; *Howland* v. *Burlington,* 53 Maine, 55 ; *Augusta* v. *Kingfield,* ·36 Maine, 235. So, in the trial of a writ of entry, the defendant was permitted to impeach the marriage of the demandants' father (under whom they claimed as heirs) by showing that their father was a mulatto and their mother one-eighth indian. *Bailey* v. *Fiske,* 34 Maine, 77. So, in the trial of a complaint under the statute brought to compel the respondent to contribute towards the support of his alleged grandchild, the defendant was allowed to show a former marriage of the child's mother to impeach the latter marriage of which the pauper was the offspring. *Hiram* v. *Pierce,* 45 Maine, 367. So, in *Atkinson* v. *Medford,* ·46 Maine, *supra,* the marriage was collaterally impeached by showing the insanity of one of the parties thereto.

The same practice prevailed in Massachusetts, until the enactment of Mass. st. 1845, c. 222, which provided that the validity of a marriage shall not be questioned in the trial of a collateral issue on account of the insanity or idiocy of either party. *Goshen* v. *Richmond,* 4 Allen, 458.

But while we have no such statute, and while in cases of void marriages no special judicial proceedings are necessary to declare them void, we do have a statute founded on grounds of prudence and propriety, providing in substance that, when the validity of a marriage is in doubt, either party may file a libel as for divorce, and the court shall decree it annulled or affirmed according to the proof. R. S., c. 60, § 18. And when a marriage is annulled on account of insanity, the issue is the legitimate issue of the parent capable of contracting marriage. R. S., c. 60, § 19.

The practice of collaterally impeaching marriages declared by the statute to be absolutely void, has been too long established to be changed in the absence of any statute to that effect.

*Exceptions overruled.*

PETERS, C. J., DANFORTH, EMERY, FOSTER and HASKELL, JJ., concurred.