JAMES A. GUTHERY, an Incompetent Person, by HOMER FEURT, his Guardian, Respondent, v. ELLA BELL, alias ELLA GUTHERY, and N. M. WETZEL, Administrator of the Estate of WILLIAM B. GUTHERY, Deceased, defendants; ELLA BALL, alias ELLA. GUTHERY, Appellant.

Kansas City Court of Appeals, February 7, 1921.

1. **MARRIAGE: Annulment: Mental Incapacity: Where Evidence is Evenly Balanced Chancellor's Conclusions Will be Deferred to.** Where evidence showed that sometime prior to the day of marriage ceremony the man had been in ill health and on the day thereof, had suffered a second stroke of paralysis, rendering him unconscious practically all of the time until his death, which occurred on the day of marriage, and there was conflicting evidence as to his mental capacity at the time of ceremony, *held*, that the evidence was so evenly balanced that appellate court will defer to conclusions of chancellor finding that deceased was incapable of knowing what he was doing at time of ceremony, and that the annulment of said marriage should be sustained.

2. **APPEAL AND ERROR: Evidence: In Equity Cases the Evidence is Reviewed and Weighed by Appellate Court.** In an equity case the appellate court is required to review all the evidence and to pass upon the weight thereof.

3. ———: **Decision on Appeal in Prior Action at Law Does Not Determine Law Involved in Subsequent Action in Equity.** What was said in a former decision on appeal setting aside the appointment of an administrator in a suit at law, by the widow, .does not determine the law involved in an equity case to annul the marriage.

4. **MARRIAGE: Contract: Mental Consent and Physical Assent Necessary to Validity.** Two things are necessary for making of contract, mental consent, which cannot be had if the party is mentally incapacitated. and the other, physical assent to agreement, and

while one might have perfect mental capacity and desire to enter into contract, unless some physical assent is manifested there would be a total absence of any contract, either void or voidable.

5. ———: Annulment: Suit to Annul Marriage Proper in Order to Prevent Misapprehension and Confusion Following Ceremony. The attempted performance of marriage ceremony was ineffective for any purpose, and while it might not have been necessary to have brought suit to annul the alleged proceedings, a suit was proper in order to prevent misapprehension and confusion as to the real *status* following attempted ceremony.

Appeal from the Circuit Court of Daviess County.—*Hon. Arch B. Davis*, Judge.

AFFIRMED.

*Dudley, Selby & Brandon* for respondent.

*M. E. Pangburn, W. W. Davis* and *Frank W. Ashby* for appellant.

BLAND, J.—This is a suit in equity to annul a marriage claimed to have been entered into by William B. Guthery, now deceased, with Ella Ball.

The petition alleges that shortly before the celebration of the marriage said Guthery was completely paralyzed and unable to speak or make his wants known; that at the time of the pretended marriage ceremony "death had struck said William B. Guthery, he was in a death stupor, the death rattle was in his throat and he was wholly incapable of knowing what he was doing or entering into a marriage contract as said defendant, Ella, well knew." The petition further alleges mental incapacity on the part of the deceased at the time of the alleged ceremony. There was a trial which resulted in a judgment annulling the marriage and defendant Ella Ball, or Ella Guthery, has appealed.

The facts show that William B. Guthery died on the 9th day of March, 1918, in Daviess county, Missouri; that deceased was a farmer living near Jameson and that

Ella Ball some years prior to his death came to his house as a housekeeper; that deceased was a man past seventy years of age at the time of his death and had been in bad health for several years prior thereto; that on February 15, 1917, he suffered a slight stroke of paralysis which resulted in his being confined to his home, either in bed or about the premises, until sometime during the latter part of May or the first of June of that year; that on March 9, 1918, deceased suffered from a second stroke of paralysis from which he died. He was married to Ella Ball about 11:00 A. M. on the day of his death which occurred about 7:00 P. M. Ella Ball called in a justice of the peace for the purpose of performing the ceremony.

There was evidence tending to show that after the last stroke of paralysis deceased was unconscious practically all of the time until death and was unable to recognize his friends who called to see him. The doctor who attended him in his last illness testified that he was present attending the deceased at 10:30 A. M. on the day of his death and that at that time deceased was lying on his back with his mouth open; that he, the witness, closed his mouth but it dropped open again. This witness testified that at that time deceased was in a stupor and was dying and had the death rattle in his throat. The physician returned at 4:00 o'clock in the afternoon and at that time there was no change in deceased's condition, deceased continued to be in a dying state; he returned again at 6:45 P. M. and deceased remained in the same condition.

Another witness testified that he visited the deceased at 9:00 o'clock on the morning of the day of his death; that he was a friend of the deceased but that the latter did not know him at that time. Another witness testified that he visited the deceased at 4:30 P. M. of the day of his death and that deceased was dying then and did not recognize any one. Another witness testified that he visited deceased almost daily after his last attack of paralysis; that the first time he saw him after this stroke

deceased was in the room lying in the bed on his back with his legs and arms straightened out and unconscious; that there was no time covering this period of his last illness that witness saw deceased that he appeared to be other than unconscious; witness thought that he probably saw the deceased on the day of his death.

The Justice testified that he found Guthery either in a stupor or asleep; that deceased was lying on the bed on his back with his legs out straight and his arms on his body; that appellant raised Guthery up and he shook hands with the justice and in doing so raised his head five or six inches; that deceased recognized the justice; that the witness knew that deceased was a sick man and had suffered a stroke of paralysis and the witness wanted to be sure before performing the ceremony that Guthery was capable of understanding the nature of the act, so he called in the nurse and the latter raised the deceased up and put a box upon his knees and gave him a pencil telling him to write his name, which deceased did and at the request of the nurse wrote his post office address. The nurse laid him back on the bed and the justice asked deceased if he realized he was to be married to Ella Ball and he turned his head sidewise and said, "Uh Huh" and nodded his head in the affirmative. Paralysis had deprived Guthery of his speech and this was the only sound he made while the justice was there. The justice said, "Join hands," and the deceased took hold of the hand of Ella Ball and the justice performed the ceremony.

There was some evidence tending to show that at the time of the marriage the paralysis had largely destroyed Guthery's muscular action; that he was unable to speak but that his mind was clear and sound. There was yet other evidence from which it could be said that while deceased was mentally incapacitated he was physically able to go through the marriage ceremony. While, on the other hand, there was evidence of persons who saw the deceased shortly before and shortly after the time of the alleged ceremony tending strongly to show

that deceased was in a stupor and unconscious at the time of the alleged marriage. Even the testimony of the justice shows that deceased was in a very bad state at that time. The evidence is so evenly balanced that we defer to the conclusions of the learned chancellor who tried this case and will therefore hold that from all the evidence in the case the charge in the petition that "death had struck" the deceased, that "he was in a death stupor, the death rattle was in his throat and he was wholly incapable of knowing what he was doing" at the time of the alleged ceremony, was sustained.

Upon the death of Guthery one Wetzel, joined as a defendant in this case in his capacity of administrator of Guthery's estate, without the renunciation or consent of Ella Ball, was appointed administrator of the estate of the deceased. The probate court, on her motion, she appearing to be the widow, revoked the appointment of Wetzel and appointed her as administratrix. There was an appeal to the circuit court of Daviess county where a jury was waived and after a trial a judgment sustaining the action of the probate court was rendered. The case was appealed here and the judgment of the circuit court was affirmed. [See in the Matter of the Estate of William B. Guthery, deceased, Ella Guthery, complainant, v. N. M. Wetzel, Administrator, No. 13403, decided by this court but not yet published.]

The opinion in that case was written by the author hereof but what was said therein was not concurred in by the other judges, they agreeing to the result only. One of the matters submitted to us in that case was whether the mental incapacity, if any, of the deceased, made the marriage void or voidable only. It was admitted in that case, as in this, that if mental incapacity renders a marriage voidable only and does not render it absolutely void, that the marriage cannot be attacked after the death of one of the parties. It was the opinion of the writer of the former opinion, at the time of the writing of the same and is now, that a marriage entered into by a person who is physically able to go through the

form of the ceremony but is mentally incapacitated to make a contract, is voidable only and not absolutely void.

However, the facts stated in the former opinion are not as full as they would have been had that case been one in equity as is this one. In that case it was not necessary to set forth any facts other than those tending to show that there was some evidence to sustain the judgment of the trial court. The evidence of the defendant in that case was not set forth in detail and we were not called upon to, nor did we, pass upon the weight of the evidence. Of course, in an equity case the appellate court is required to review all the evidence and to pass upon the weight thereof. Under such circumstances there should be a fair statement of all of the evidence.

Appellant seems to think that what was said in the other case determines the law involved in the case at bar, but we are unable to accept appellant's contention in this regard. While the petition in this case pleads mental incapacity on the part of the deceased to understand the effect of the marriage ceremony, it pleads something more than that. It alleges that the deceased was dying at the time of the ceremony and was in a stupor, or, in other words, that he was in an unconscious state at that time. As before stated the evidence sustains the allegation to the effect that deceased was unconscious.

We take it that there are two things necessary for the making of a contract; one, mental consent, which cannot be had if a party is mentally incapacitated, and the other, physical assent to the agreement. The physical part might be manifested by word of mouth, writing, sign, or even in some negative manner on the part of a contracting party. One might have perfect mental capacity and desire to enter into a contract but unless some physical assent is manifested there would be a total absence of any contract of any kind, either void or voidable. The evidence in this case shows that deceased was not only mentally incapacitated but that he was in

such state that he could not have gone through the form of a marriage ceremony; that he was unconscious, or inert, and could have given no physical assent to the contract. Under the circumstances deceased might as well have been in some foreign country ignorant of the alleged ceremony performed in Daviess county as to have been in the situation described. It is quite apparent that no contract was entered into. The whole proceeding wherein the justice attempted to perform a marriage ceremony was ineffective for any purpose. While it might not have been necessary to have brought a suit to annul the alleged proceedings, we have no doubt that a suit is proper in order to prevent misapprehension and confusion as to the real *status* following the attempted ceremony.

From what we have said the judgment should be affirmed, and it is ordered. All concur.