[No. 20774.  Department One.  November 10, 1927.]

*In the Matter of the Estate of* JOHN T.
HOLLINGSWORTH, *Deceased.*[1]

[1] MARRIAGE (15) — EFFECT OF INFORMAL OR ILLEGAL MARRIAGE —
VOID OR VOIDABLE — IMPEACHING VOIDABLE MARRIAGE.  A marriage
of a feeble-minded person, "prohibited" by Rem. Comp. Stat.,
§§ 8439, 8440, procurement of which by false affidavit is punish-
able as perjury, by Id., § 8452, the statute not providing that
it shall be void, is voidable only, and cannot be impeached
after the death of one of the parties.

Appeal from a judgment of the superior court for
Pierce county, Chapman, J., entered March 29, 1927,
dismissing an application in probate, upon sustaining
a demurrer to the petition.  Affirmed.

*E. K. Murray* and *Leo Teats,* for appellant.

*Fitch & Arntson, Charles W. Johnson,* and *J. Charles
Dennis,* for respondent.

MITCHELL, J.—The controlling question in this case
is whether or not the marriage between Vera E. Far-
rell and John T. Hollingsworth was void or voidable.
Upon the making of affidavits required by the marriage
law, they procured a license from the county auditor
of Pierce county, and were married by a minister of
the gospel in 1914, and thereafter lived together as hus-
band and wife, accumulating the property involved in
this controversy.  He died February 20, 1927, leaving
her surviving.

The complaint or petition against her in this pro-
ceeding, in the probate of his estate, alleged, in sub-
stance, that, at the date of the marriage and for a
long time prior thereto, she was and still is a feeble
minded person; that, at the time of getting the license

[1]Reported in 261 Pac. 403.

and being married she was under forty-five years of age; and that she fraudulently procured the license by falsely swearing she was not feeble minded. A general demurrer to the complaint was sustained. The petition was dismissed and this appeal followed.

[1] There seems to be no dispute between the parties that the rule is that a voidable marriage is valid for all purposes until annulled, and can be attacked only in a direct proceeding during the lifetime of both spouses; hence, on the death of either party, the marriage cannot be impeached. It is claimed by the appellant, however, that the marriage in this case was a void one.

Chapter 174, Laws of 1909, p. 633, is involved. It is "An act regulating marriages and the issuance of marriage licenses, prohibiting marriage in certain cases, providing penalties for the violation of the provisions of this act and repealing all acts and parts of acts in conflict herewith." Section 1 provides:

"No woman under the age of forty-five years, or man of any age, except he marry a woman over the age of forty-five years, either of whom is a common drunkard, habitual criminal, epileptic, imbecile, feeble-minded person, idiot or insane person, or person who has theretofore been afflicted with hereditary insanity, or who is afflicted with pulmonary tuberculosis in its advanced stages, or any contagious venereal disease, shall hereafter intermarry or marry any other person within this state." [Rem. Comp. Stat., § 8439.]

Section 2 of the Laws of 1909, p. 634, provides that, no clergyman or officer authorized to solemnize marriages shall perform a marriage ceremony if either of the parties is in a class mentioned in the law. Section 3 provides for the filing of proper affidavits before the county auditor shall issue a marriage license, and that false swearing in the affidavits shall constitute perjury. Section 4, p. 635, provides penalties for violations of

the provisions of the act. These several sections are found in Rem. Comp. Stat., § 8439, 8440, 8451 and 8452. There is no declaration in the act that any such marriage is void.

The mental and physical conditions enumerated are all in a class. One is no less important than another, under the statute. In some of such cases, it is common knowledge that there may be, and often are, complete and lasting restorations or reformations consistent with successful marriage careers, and the notion that in such cases any one may, after the death of one of the spouses, have the marriage declared void, thus disgracing and disinheriting the offspring of the marriage, is at once instinctively revolting. Such considerations cannot be ignored when we come to decide whether or not the legislature intended that such marriages should be void or simply voidable.

While it is true that, in this case, the demurrer admits the feeble-mindedness of the respondent at the time of marriage, nevertheless, in construing this statute, it is entirely proper to consider that the condition of feeble-mindedness, the charge in this case, may in a given case be a most elusive, elastic thing, capable of determination only according to the number, qualifications and possible partisanship of expert and lay witnesses, in the judgment of the trier of the facts. The statute in no way defines the term.

In the legislative history of this territory and state, opposition to marriages between certain classes of persons has been declared by different terms such as "prohibited," "unlawful," "void," "voidable." Among them the following: Void, Laws of 1854, p. 99, § 115; void, Laws of 1854, p. 404, § 2; void, Laws of 1855, p. 36, § 1; prohibited, Laws of 1866, p. 81, § 2; voidable, Laws of 1866, p. 81, § 3; prohibited, Code of

1881, p. 184, § 949; voidable, Code of 1881, p. 411, § 2381; unlawfully, void, within six months after decree of divorce, Laws of 1893, p. 225, § 1; and the statutes under consideration in this case, which simply say that the classes of persons referred to shall not marry.

*In re Hollopeter,* 52 Wash. 41, 100 Pac. 159, 132 Am. St. 952, 17 Ann. Cas. 91, 21 L. R. A. (N. S.) 847, was a case of the marriage of two minors. The marriage license in that case was obtained fraudulently by false affidavits purporting to give the mother's consent to the marriage of her daughter. The statute did not declare that a marriage under such circumstances should be void. In the opinion it was said:

"We are asked to hold the marriage void, for the reasons that the license was obtained by fraud, and that Imogene was incapable of consenting thereto. Assuming the fact to be as found by the lower court, that the mother of Imogene did not consent to the marriage of her daughter, this would not avoid the marriage in the absence of a statute expressly declaring it to be so. 19 Am. & Eng. Ency. Law (2d ed.), p. 1190; 26 Cyc. 835.

"In the absence of any express declaration that a marriage without a license is void, the marriage is universally held to be valid. 19 Am. & Eng. Ency. Law (2d ed.), 1191. A party to the wrongful issuance of a license, or who wrongfully performs the marriage ceremony, may be punished. Bal. Code §§ 4482, 4483, (P. C. §§ 6275, 6276); 26 Cyc. 835. A party who procures the issuance of a marriage license by means of a fraudulent affidavit may be convicted of forgery. But a sound public policy has declared that the validity of the marriage in such cases shall not be inquired into. Bishop, Marriage, Divorce and Separation. § 529."

Similarly in *Gould v. Gould,* 78 Conn. 242, 61 Atl. 604, it was held that a marriage in contravention of a statute of that state merely prohibiting marriage by

an epileptic and providing the punishment therefor, is not void. It was stated that the statute "contented itself with imposing criminal penalties," and it was further stated therein that the omission to declare the marriage void is made doubly significant by the fact that such declaration is found in two other statutory provisions and not in the third.

In a comparatively recent case (1923) *Lau v. Lau,* 81 N. H. 44, 122 Atl. 345, the supreme court of New Hampshire said that the question in the case was whether the marriage of a feeble-minded person, entered into in violation of the statutory prohibition is void or only voidable. Further it was said:

"The statute upon the subject prohibits the marriage, under certain circumstances, but does not declare that it shall be void. Laws 1915 c. 161. It is the general rule in this country that a mere statutory prohibition of a certain marriage does not render it void unless the statute so declares. *Gould v. Gould,* 78 Conn. 242, 61 Atl. 604,.2 L. R. A. (N. S.) 531; *Cunningham v. Cunningham,* 206 N. Y. 344, 99 N. E. 845, 43 L. R. A. (N. S.) 355; 18 R. C. L. 440."

The general rule thus spoken of is the one adopted in this state in the case of *In re Hollopeter.* In the New Hampshire case, the court held,

"As the marriage was not void, and the husband is dead, no inquiry can now be made into its validity."

We cannot readily review all the authorities cited by counsel in this case. Argument contrary to the views we have already expressed is built on behalf of the appellant to a great extent upon the case of *In re Wilbur's Estate,* 8 Wash. 35, 35 Pac. 407, 40 Am. St. 886. True, there are some statements in that case which, upon their faces, are at variance with our present views; but it may be said that the statute involved in that case was not cast in a setting such as the pres-

ent one—the present one being described and intended as regulatory—and in that case there had been no statutory marriage license or ceremony. We are not disposed to allow that case to materially influence us in the interpretation of the statute now under consideration; but we are induced to follow the trend of more modern cases and apply, in the present one, the general rule in this country that a marriage between persons of a class that the statute simply says shall not marry, that statute being accompanied by provisions of a regulatory sort and providing for punishments of offenders, is not void in the absence of a declaration in the statute that such marriage is void.

Affirmed.

MACKINTOSH, C. J., PARKER, TOLMAN, and FRENCH, JJ., concur.