NELL SHAMBLIN *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 9092)

Submitted October 15, 1940. Decided December 10, 1940.

*S. N. Friedberg* and *J. W. Copley*, for appellant.

Fox, JUDGE:

The claimant, Nell Shamblin, is the widow of Bernard Shamblin, and as such was awarded compensation by reason of his death resulting from injuries sustained in the

course of employment coming within the workmen's compensation law. Subsequently, on February 28, 1939, she entered into a supposed marriage with F. E. Steele. Two days later she learned that at the time of said marriage, Steele had at least two wives living, from whom he had not been divorced. By reason of the incapacity of Steele to enter into any marriage, the protended marriage to her was a nullity and was so declared by a decree of the Circuit Court of Mingo County on the 31st of August, 1939, in which it is provided that the said marriage "shall be taken, treated and held as if it had never been entered into between the said parties."

By reason of this assumed marriage to Steele, payments of compensation to claimant were discontinued as of its date. She was reinstated as the recipient of compensation as of September 1, 1939. The question at issue is whether or not she is entitled to compensation for the intervening period of six months. The appeal board sustained the commissioner's action in denying her claim thereto, and from that ruling she prosecutes this appeal.

Inasmuch as the decision of the question before us depends on the application of two statutory provisions to the facts disclosed by the record, the pertinent portions thereof are here quoted:

"All marriages * * * which are prohibited by law on account of either of the parties having a former wife or husband then living * * * shall be void from the time they are so declared by decree of nullity." Code, 48-2-1. "If the deceased employee leaves a dependent widow or invalid widower, the payment shall be thirty dollars per month until the death or remarriage of such widow or widower *. *. *." Code, 23-4-10 (d).

In applying these statutes, we must bear in mind the liberality with which all matters affecting the allowance of benefits under the compensation statute are considered, to the end that their true purposes may be made effective.

A rigid adherence to Code, 48-2-1, would seem to require a holding that all marriages are to be treated as legal

and binding, for all purposes, until set aside and annulled by a court of competent jurisdiction. The wisdom of such a rule is manifest in cases where the marriage may be ratified. The difficulty arises in cases such as that before us, where one of the parties was incapacitated by law from entering into the marriage contract by reason of having a former spouse living and undivorced, or where other legal incapacity to enter into the relationship exists. In the case at bar there could not have been a legal marriage and yet, under the statute, there was created a status which continued until the decree nullifying the ceremony by which the same was brought about.

This question, in some of its aspects, was before this Court in *Sledd* v. *Compensation Commissioner*, 111 W. Va. 509, 163 S. E. 12, 13, 80 A. L. R. 1424, and a quotation from the opinion in that case will illustrate the rule at common law:

> " 'A void marriage is a mere nullity, and its validity may be im*m*peached in any court, whether the question arise directly or collaterally, and whether the parties be living or dead.' II Schouler on Marriage, Divorce, etc. (6th. ed.), p. 1353. For same proposition see also I Bishop on Marriages, etc., p. 106. As to a voidable marriage Schouler says, at page 1356 of volume cited, 'Unless the suit for nullity reaches its conclusion during the lifetime of both parties, all proceedings fall to the ground, and both survivor and offspring stand as well as though the union had been lawful from its inception.' As to the distinction between void and voidable marriages, a learned author says: 'A void marriage confers no legal rights, and, when it is determined that the marriage is void, it is as if no marriage had ever been performed. * * * A voidable marriage differs from a void marriage in that it may be afterwards ratified by the parties and become valid and usually is treated as a valid marriage until it is decreed void.' Keezer on Marriage and Divorce, p. 16. Ordinarily 'the canonical impediments, such as consanguinity, affinity, and impotence,

render the marriage voidable, the civil, such as a prior marriage, idiocy, and the like usually render it void.' Bishop, *idem.,* p. 113."

The rule at common law was, as to certain void marriages, embodied in the Virginia statute, Code 1860, Chapter 109, Section 1, which provided that marriages between a negro and a white person or marriages prohibited on account of either of the parties having a former wife or husband then living, should be "absolutely void without any decree of divorce or other legal process." But this rule was changed by Section 1 of Chapter 64 of our Code of 1868, which provides that such marriages "shall * * * be void from the time they are so declared by a decree of divorce or nullity." We find a provision in the Virginia Code of 1860, and in our Code of 1868, Section 7 of Chapter 78, stating that "the issue of marriages held null in law or dissolved by a court, shall nevertheless be legitimate," which provision is still retained in our statute, Code, 42-1-7.

It would seem that the general, if not primary, purpose of our present statute, Code, 48-2-1, is to protect the legitimacy of children born to void or voidable marriages, and to give effect to the provisions of Code, 42-1-7, and further to repeal the statute under which a void marriage could be impeached collaterally. Under our statute, the plea of a void marriage can only be based upon a decree of nullity, and this must have been entered by a court of competent jurisdiction. The same rule applies in compensation cases, and the commissioner cannot pass on this question. *Sledd* v. *Compensation Commissioner, supra.*

If the purpose of Code, 48-2-1 is that indicated above, rather than to impose an adamant rule from which there can be no departure in any case, then we have wider scope in giving effect to a decree nullifying a marriage, which was, in fact, void from the beginning because one of the parties did not have legal capacity to enter into the same. In the *Sledd* case there had been no decree of nullity, and the rigid rule was applied for the benefit of the claimant, and logically the same rule would have to be

applied here against the claimant, were it not for the fact that here we have a decree of nullity in which the marriage is said never to have existed. Having in mind the legislative attitude and that of the courts in relation to compensation cases, we think no violence will be done to the purpose of Code, 48-2-1, by holding that the decree of nullity should be interpreted as justifying the payment of compensation to the claimant for the contested period. We think also that the remarriage referred to in Code, 23-4-10 (d) should be interpreted to mean a legal remarriage, and that no good purpose would be served by punishing the claimant for an act which, through no fault of her own so far as the record discloses, she was fraudulently induced to commit.

The orders of the compensation commissioner and the appeal board are reversed and the case remanded to the commissioner for further proceedings.

*Reversed and remanded.*