[No. 7754. Decided March 1, 1909.]

*In the Matter of the Petition of* GROVER HOLLOPETER *for Writ of Habeas Corpus on Behalf of Imogene Hollopeter.*[1]

MARRIAGE—VALIDITY—FRAUD IN SECURING LICENSE. Fraud or forgery in securing a marriage license for a minor without the consent of the parents does not invalidate the marriage, there being no statute so providing.

SAME—MARRIAGE OF MINOR—AGE OF CONSENT. A female of the age of fourteen is within the common law age of consent, and is not, as a matter of law, incapable of contracting marriage.

SAME—EFFECT OF STATUTE. The law fixing the age of eighteen as the age under which a female cannot consent to carnal knowledge does not overcome the common law age of consent to marry.

SAME—ANNULMENT—ACTIONS BY PARENTS OF MINOR—PARTIES— CAPACITY TO SUE. Parents cannot maintain an action to annul the marriage of their minor child who was incapable of consenting because under legal age, procured by fraud and without the parent's consent; since Bal. Code, § 4477, authorizes such actions only at the suit of the party under disability.

[1]Reported in 100 Pac. 159.

HUSBAND AND WIFE—INFANTS—RIGHT OF HUSBAND TO SOCIETY OF WIFE—ACTION FOR CUSTODY—PARTIES. A minor husband becomes of full age upon the performance of the ceremony, and may maintain an action in his own name to secure the custody and society of his wife.

Appeal from a judgment of the superior court for Thurston county, Irwin, J., entered August 24, 1908, upon findings annuling a marriage, and denying a writ of *habeas corpus* sought by the husband to secure the release of his wife, after a trial on the merits of *habeas corpus* proceedings, consolidated for trial with an action by the wife's parents for the annulment of the marriage. Reversed.

*King & King* and *E. N. Steele,* for appellant. A marriage performed regularly even without the formality of parental consent or the issuance of a license where these are required by statute, is valid and binding. *Askew v. Dupree,* 30 Ga. 173; *State v. Walker,* 36 Kan. 297, 13 Pac. 279, 59 Am. Rep. 556; *Holmes v. Holmes,* 6 La. 463, 26 Am. Rep. 482; *Gardiner v. Manchester,* 88 Maine 249, 33 Atl. 990; *Hargroves v. Thompson,* 31 Miss. 211; *Haggin v. Haggin,* 35 Neb. 375, 53 N. W. 209; *State v. Robbins,* 28 N. C. 23, 44 Am. Dec. 64; *State v. Parker,* 106 N. C. 711, 11 S. E. 517; *Connors v. Connors,* 5 Wyo. 433, 40 Pac. 966; *Lacoste v. Guidroz,* 47 La. Ann. 295, 16 South. 836; *Hiram v. Pierce,* 45 Maine 367, 71 Am. Dec. 555; *Holtz v. Dick,* 42 Ohio St. 23, 51 Am. Rep. 791; *Hunter v. Milam* (Cal.), 41 Pac. 332; *Parton v. Hervey,* 1 Gray 119; *Fitzpatrick v. Fitzpatrick,* 6 Nev. 63; *Warwick v. Cooper,* 5 Sneed (Tenn.), 659; 16 Am. & Eng. Ency. Law (2d ed.), p. 264. The marriage being valid, a suit for annulment cannot be maintained by the parents or next friend or guardian. 14 Cyc. 653; *Mohler v. Shank's Estate,* 93 Iowa 273, 61 N. W. 981, 57 Am. St. 274, 34 L. R. A. 161; *Worthy v. Worthy,* 36 Ga. 45, 91 Am. Dec. 758; *Besore v. Besore,* 49 Ga. 378; *Birdzell v. Birdzell,* 33 Kan. 433, 6 Pac. 561, 52 Am. Rep. 539; *Winslow v. Winslow,* 7 Mass. 95; *Richardson v. Richardson,* 50 Vt. 119; *Bradford*

*v. Abend*, 89 Ill. 78, 31 Am. Rep. 67; 7 Ency. Plead. & Prac. p. 61, § 6.

*Vance & Mitchell*, for respondents.

CHADWICK, J.—This was an action brought originally by Grover Hollopeter, as husband of Imogene Hollopeter, on her behalf, alleging that Nat Glenn and Mrs. Nat Glenn, her parents, were restraining her of her liberty. From the petition and return, it appears, that on the 7th day of July, 1908, petitioner procured a marriage license to be issued by the county auditor of Thurston county, authorizing the marriage of Grover Hollopeter and Imogene Glenn; that they were married on the same day by a minister of the gospel; that they went on a wedding trip to North Yakima and Tacoma, where they remained several days; that the marriage was consummated; that Imogene Glenn was a minor of the age of fourteen years, and Grover Hollopeter a minor of the age of nineteen years; that the writing purporting to give the consent of Mrs. Glenn to the issuance of a license was made out and signed by her daughter Imogene, as she contends, with her mother's permission and consent and in her presence. The mother, however, denies that this was so. The testimony is conflicting, and we are content to hold with the trial court that Mrs. Glenn did not in fact consent to the marriage. Petitioner was arrested at Tacoma, while returning from the wedding trip, upon a charge of forgery. While he was in custody, Mr. and Mrs. Glenn forcibly took possession of the person of Imogene, and have since restrained her of her liberty. A proceeding for annulment of the marriage was begun by the parents of Imogene while the *habeas corpus* proceeding was pending. Both cases were consolidated, and are now brought here upon the appeal of Grover Hollopeter.

From the testimony it appears that Grover Hollopeter was a young man of full growth, and has been for some time past earning his own living, and while at work has earned from three to four dollars per day. The testimony would also indi-

cate that Imogene was a young woman of mature mind.   The court found:

"That Imogene Glenn was, on the —— day of July, 1908, of the age of 14 years; that on said date the defendant was of the age of 19 years; that on the said last mentioned date the said minor child, Imogene Glenn, and the said minor, Grover Hollopeter, procured a license to marry from the auditor of above county and state, and thereafter were united in marriage by a properly ordained minister of the gospel.

"That the parents, or either of them, of the said minor child, Imogene Glenn, did not consent in writing, or at all, as required by law, to the issuance of said marriage license or to the said marriage; that the signature purporting to be the signature of one of the parents of said Imogene Glenn was affixed thereto by the said minor without the knowledge or consent of her parents or either of them, all of which facts were known to the defendant, Grover Hollopeter; that the parents of the said Grover Hollopeter did not sign the written consent to the marriage of their son, and that their names were affixed to said consent by one Mrs. —— Gilbert, a daughter of defendant's parents; that both of the said parents of defendant are able to read and write and that they had in a vague and general way authorized their daughter, Mrs. Gilbert, to consent to the said marriage, the vague authorization having no reference to any particular time; that the defendant's parents appeared in court and expressed their willingness to ratify, and did ratify, in so far as they might, the act of their said daughter in signing their names to said consent.

"That after the marriage between said Imogene Glenn and Grover Hollopeter, that they did cohabit together as husband and wife, and did continue to so cohabit for over a week and until the plaintiff herein N. G. Glenn and R. A. Glenn by main force took the said Imogene Glenn from the said Grover Hollopeter, and took her to their home where they ever since said time have kept her confined against her will and against the will and desire of this defendant.

"That Grover is able and willing and desires to make a home for the said Imogene Glenn and provide for her, and that the said Imogene Glenn is willing and desires to make her home with the said defendant."

From which facts the court make the following conclusions of law :

"That Imogene Glenn being of non-age, her parents being her natural and lawful guardians, may on her behalf, and on their own behalf, as such parents, maintain an action to avoid and annul such marriage. ,

"That the said marriage should be annulled, avoided and set aside as having been entered into by parties not capable of contracting, and the conditions precedent to the issuance of the marriage license never having been complied with."

We are asked to hold the marriage void, for the reasons that the license was obtained by fraud, and that Imogene was incapable of consenting thereto. Assuming the fact to be as found by the lower court, that the mother of Imogene did not consent to the marriage of her daughter, this would not avoid the marriage in the absence of a statute expressly declaring it to be so. 19 Am. & Eng. Ency. Law (2d ed.), p. 1190; 26 Cyc. 835.

In the absence of any express declaration that a marriage without a license is void, the marriage is universally held to be valid. 19 Am. & Eng. Ency. Law (2d ed.), 1191. A party to the wrongful issuance of a license, or who wrongfully performs the marriage ceremony, may be punished. Bal. Code, §§ 4482, 4483 (P. C. §§ 6275, 6276) ; 26 Cyc. 835. A party who procures the issuance of a marriage license by means of a fraudulent affidavit may be convicted of forgery. But a sound public policy has declared that the validity of the marriage in such cases shall not be inquired into. Bishop, Marriage, Divorce and Separation, § 529.

Imogene was within the common law age of consent, so that we cannot hold, as a matter of law, as did the lower court, that she was incapable of consenting to the marriage. But it is argued that the common law age of consent is overcome in this state by the enactment of the law fixing the age of eighteen as the age under which a female cannot consent to carnal sexual intercourse. The fact that the law permits the marriage of minors at all is enough to overcome the argu-

ment advanced in behalf of this proposition. To so hold would be to say, in effect, that the enactment of the statute covering and defining the crime of statutory rape was a repeal of the law permitting infants to marry, even though they had the consent of their parents. Such was manifestly not the intention of the statute, for it is sometimes important that those under the statutory age should marry, and under certain conditions such marriages are to be encouraged. Applied to a particular case, the rule that infants of the age of fifteen and twenty, as the parties now are in this case, may marry, may seem harsh. But it must be remembered that it is the same rule that would sustain the marriage of a man all but twenty-one and a woman who is not quite eighteen. Experience has taught us that the rule that marriage solemnized and consummated without the consent of a parent is valid, is not only salutary but wholesome and necessary, although there are now, and always will be, those who oppose the thought of marriage under legal age.

In England it was sought to prevent the voluntary marriage of persons under legal age, by providing that marriages solemnized under a license should be void when entered into without the consent of the father if living, or if dead, of the guardian or mother. Lord Hardwick's Marriage Act, 26 George II, chap. 33. All manner of mischiefs followed the enactment of this law. Marriages consented to by a mother, the father being beyond seas and supposed to be dead, were declared void. Children were bastardized, and subsequent consent of the parents held to be ineffectual to sustain the marriage. The courts finally endeavored to cure the hardship of the rule by holding that the burden was on the Crown or parent to prove the negative of consent, and by finding consent from the slightest circumstances. So anomalous had the situation become that Parliament finally passed an act, 3 George IV, chap. 75, followed by 19 and 20, Victoria, chap. 119, providing that, although the consent of the parents or guardians be required by law, the absence of it would in

no case render the marriage void.   This is the law in every state of the Union where the question has been passed upon, with the possible exception of the state of Texas.

The remaining question, Have the parents of Imogene capacity to sue to annul the marriage, is determined by the foregoing discussion; but because of the able and earnest argument made in ·this behalf, we have decided to express our views upon it at greater length.   As suggested in the oral argument, there is but little authority directly in point. Under the statute—in this state the whole law of marriage is regulated by the statute—it is provided that marriages may be annulled where a party was incapable of consenting thereto for want of legal age or sufficient understanding,. or where the consent of either party is obtained by force or fraud, but then only at the instance of the party laboring under the disability.    Bal. Code, § 4477  (P. C.  § 6262). There being no statute permitting a parent to maintain an action to annul the marriage of a child in this state, and considering the policy of the law to sustain, rather than abrogate, the marriage relation, we are constrained to hold that the parents cannot maintain their action.   We have held the marriage valid.   A decree of nullity is entered only upon the theory that a valid marriage never existed.   This is in accord with the general rule that a third party cannot maintain an action for the annulment of the marriage.   26 Cyc. 842, 910; *Ridgely v. Ridgely,* 79 Md. 298, 29 Atl. 597, 25 L. R. A. 800; *McKenney v. Clarke,* 2 Swan (Tenn.) 320.   While it has been declared in England, under the statute of 43 Eliz. 32, and in some states under similar statutes, that a parent may maintain an action to annul a marriage, yet the fact that the marriage is valid and the right of the parent is not absolute but wholly dependent upon the statute, and that the mere will of the parent cannot avail over the welfare of the ·infant, is recognized.

"The marriage contracts of infants are not dependent upon the consent of their parents to the marriage, and parents may

not have them annulled upon the ground of their non-consent. It is only the infant wife who may maintain an action to annul her marriage on the ground that it took place without the consent of her father, mother, guardian, or other person having legal charge of her person. Code Civ. Proc., § 1742. Neither an infant husband nor a parent or guardian may maintain such an action, and the reasons therefor are not difficult to discover. The right of a parent to maintain an action for the annulment of the marriage of his infant son or daughter rests solely upon the authority conferred by sections 1744 and 1750 of the Code of Civil Procedure, and the grounds therefor are limited to the fact that one of the parties to the marriage had not attained the age of legal consent, or that the consent of one of the parties was obtained by force, duress, or fraud. But has the parent a right to maintain such an action irrespective of the infant, and without making such infant a party to the action? I think not. The parent's right to maintain such an action is clearly in behalf of the infant, and is in no way dependent upon any right which the parent may possess to control or restrain the marriage. . . . 'All persons having an interest in the subject of the action should be joined as plaintiffs or defendants. The complaint alleges that Glen D. Fero consents to the bringing of the action, and he certainly is united in interest with either the plaintiff or the defendant. If he desires to have the marriage annulled, he is interested in obtaining the judgment demanded; but if, on the other hand, he is satisfied with his marital relations, his interest is adverse to that of the plaintiff. In either case the controversy ought not to be determined until he is brought into the action. The rule contended for by the plaintiff's counsel would permit a parent, guardian, or "any relative" of a party to invalidate a marriage without the consent or knowledge of either of the parties thereto, and, if it were to obtain, might prove subversive to social order, sound policy, and good morals.' [*Fero v. Fero,* 70 N. Y. Supp. 742.]" *Wood v. Baker,* 43 Misc. Rep. 310, 88 N. Y. Supp. 854.

Under the general rule of law, Grover Hollopeter became of lawful age when the marriage ceremony was performed. He is thus entitled to sue in his own name. The ordinary legal consequences follow his marriage, and he is entitled to

the society and services of his wife.   Bishop, Marriage, Divorce and Separation, 557.

The decree of the lower court annulling the marriage is reversed, with instructions to issue the writ prayed for.

Rudkin, C. J., Crow, Mount, and Fullerton, JJ., concur.

Dunbar and Gose, JJ., took no part.