PHILLIPS, guardian, *v.* PHILLIPS.

No. 15975. NOVEMBER 14, 1947.

*R. Howard Gordon* and *Rupert A. Brown,* for plaintiff.

*J. T. Sisk,* for defendant.

BELL, Justice. The question in this case is whether the guardian of an insane married man may prosecute an action for a divorce in behalf of his ward, who has been adjudicated insane, where such person, before he was adjudged mentally incompetent and at a time when he had mental capacity to know the nature of a suit for divorce, expressed his intention and desire to obtain a divorce from the defendant, and where, after such adjudica-

tion, at the time the suit was filed and during a lucid interval, he again expressed the same intention and desire and the suit was instituted in pursuance of his direction, desire, and will "at the time of filing same." We have in this statement used the word "insane," notwithstanding the plaintiff did not anywhere use that term, alleging merely that his ward had been adjudicated "mentally incompetent". Whether or not the two expressions should be taken as synonymous in all instances, we think that they should be so treated in the present case, considering the petition as a whole, and especially in view of the allegations in the amendment, which cannot be reasonably construed otherwise than as referring to a lucid interval, after such adjudication. This accords with the treatment given to the case by counsel for the plaintiff in error, who have not sought to draw any distinction between the two expressions. See, in this connection, *Krueger* v. *MacDougald*, 148 *Ga.* 429 (1) (96 S. E. 867); Code, § 49-601; Ga. L. 1937, pp. 684, 685, section 1. Accordingly, for the sake of brevity we shall in this opinion continue to use the word "insane," and may also refer to lucid intervals.

In *Worthy* v. *Worthy*, 36 *Ga.* 45 (91 Am. D. 758), an action for divorce was brought in the name of a lunatic wife by a next friend, on the alleged ground of adultery. The court in that case overruled a demurrer and the husband excepted. It appears from the allegations that after the wife became insane she was sent by her husband to the lunatic asylum, and the question there, as stated by the court, was, whether a guardian or next friend can, of his own will, institute such a suit, and prosecute or abandon it at his pleasure. The opinion of the court was as follows:

"Mrs. Worthy was at the institution of this suit a lunatic, and confined in the asylum near Milledgeville.

"It does not appear that, after her affliction, at any time, she had a lucid interval; for if she had, and that being shown, and that during that interval she had directed suit for divorce to be brought, it should have been in her own name, without appearance by next friend. This suit is an indirect admission that she had no lucid interval, and for the purposes of this decision we will assume that the fact is so.

"If a guardian or next friend has the power insisted upon, we

desire to learn whence it is derived. It certainly is not given by express provision of law, nor can it legitimately be deduced from the personal custody of the ward, which imposes certain duties on the guardian which he must perform. We confess that, notwithstanding the very able argument of the counsel for the father of Mrs. Worthy, we are unable to regard the right to sue for a divorce in any other light than as strictly personal to the party aggrieved. It is solely under the control of the person injured by the infidelity of the other; it is at the [volition] of that party whether a suit shall be begun and prosecuted or not. (See 2 Kent Com., p. 100.)

"This principle laid down by Chancellor Kent, if correct, is decisive of the case.

"It is clear the wife gave no assent to the bringing of the suit; she is a confirmed lunatic, and from the first was incapable of volition. What though she should continue a confirmed lunatic, and the husband should continue by repeated adulteries to violate his marriage vow and duties?— the marriage cannot be dissolved at the instance and will of father, brother, or friend, whose feelings and delicacy may have been outraged by the conduct of the husband? Their will may not be her will; her will, intelligent will, only can be regarded by a court, not theirs. It may be inconvenient and greatly to be deplored that such a state of things exist. Nor can it be remedied by law, without destroying the safe foundation on which the continuance of the marriage relation reposes—that of its being personal to the party aggrieved.

"For the crime of adultery with which the husband is charged, the law has provided punishment, and the father or friend may prosecute at their will—but whether, after gross and repeated infidelities, the wife will continue to regard him as her husband, and live with him as his wife, is for her decision only. Death only can dissolve the marriage relation without her consent, and no divorce can or ought to be had in this or any case but through the agency and will of the injured wife.

"Let the judgment be reversed, on the ground that the suit should have been dismissed, as it was improperly brought by a prochein ami."

Although counsel for the plaintiff in the instant case (now

plaintiff in error) argue that it is distinguished by its facts from the *Worthy* case, we do not think that there is such a material difference in the facts as to justify a different conclusion, especially in view of the question which the court in the *Worthy* case expressly stated was there presented for decision, to wit, "whether a guardian or next friend can, of his own will, institute such a suit, and prosecute or abandon it at his pleasure." It is true that the guardian here alleged, by amendment, that the aggrieved husband, before he was adjudged insane, had expressed a desire to obtain a divorce, also that at the time the suit was filed he again, during a lucid interval, expressed the same intention and desire, and that this suit is instituted pursuant to his direction, desire, and will at the time of filing same; whereas in the *Worthy* case there was no allegation as to any wish or desire of the party in whose behalf the suit was brought. It would seem, however, that the principal question is one as to whether a guardian has authority under the law to institute and maintain such an action, and not as to what he may or may not be authorized to do under direction given by his ward during a lucid interval, either before or after adjudication of insanity and the appointment of such guardian. Shall a guardian appointed by law depend for his authority solely upon the law and be accountable accordingly, or may he also derive authority from his ward, and thereby become additionally accountable as a kind of private agent or attorney in fact? If the law itself did not empower him to sue as the legal guardian, manifestly he could not acquire authority to sue in that capacity by any personal direction given by his ward during a lucid interval.

As further illustrating the guardian's lack of authority under the law, even in the face of such alleged personal direction— his ward might during one lucid interval wish the case to proceed, but later, during another such interval, decide to condone, and direct the suit be withdrawn or dismissed; also if the suit should be allowed to proceed and a divorce should be granted, the ward might thereafter be restored to sanity, or have another lucid interval, and then deplore, altogether too late, that the marital tie had been severed during his insanity, at the instance of his guardian.

There is no statute in this State specially authorizing a guard-

ian to maintain such a suit, and under the general law as to insanity and guardianship, we do not think that a guardian can be considered as the keeper or protector of his ward's conscience in regard to such matter. While under our statutes the power of such a guardian over the person of his ward is the same as that of a father over his child, yet even a father cannot make decisions for his child as to questions of marriage and divorce. Code, §§ 49-201, 49-601, 49-603, 74-108; *Gibbs* v. *Brown*, 68 *Ga.* 803.

In *Bentley* v. *Bentley*, 149 *Ga.* 707 (1), 709 (102 S. E. 21, 17 A. L. R. 896), this court, in considering the right of a husband only nineteen years of age to defend a suit for divorce and alimony without a guardian ad litem, said: "The defendant in such a suit is the only person who knows, or has the option of deciding, whether or not he desires to contest the divorce suit or to pay alimony and support his wife; and this should not be left to a guardian ad litem to decide, as it would be contrary to public policy to permit a third party to decide whether a divorce or alimony suit should be brought or defended."

But even if it should be assumed in this case that, notwithstanding the ward (husband) had been adjudged incompetent, direction given by him during a lucid interval might be considered as having some legal force at the time it was given, the direction or power of attorney so expressed would immediately lapse or be suspended by operation of law upon termination of such interval, thus leaving the guardian without authority, so far as that feature is concerned. *Parrish* v. *Rigell*, 183 *Ga.* 218 (1), 223 (188 S. E. 15, 107 A. L. R. 1385). See also *Akin* v. *Akin*, 163 *Ga.* 18 (2) (135 S. E. 402). As to the general effect of an adjudication of insanity, see Code, § 20-206; *American Trust & Banking Co.* v. *Boone*, 102 *Ga.* 202 (3) (29 S. E. 182, 40 L. R. A. 250, 66 Am. St. R. 167); *Fields* v. *Union Central Life Insurance Co.*, 170 *Ga.* 239 (152 S. E. 237); *Williford* v. *Swint*, 183 *Ga.* 375 (2) (188 S. E. 685).

Counsel for the plaintiff in error cite a number of cases as to the authority of guardians and next friends. Several of them were alimony cases, but only two were divorce suits, *Wilson* v. *Wilson*, 174 *Ga.* 238 (162 S. E. 540), and *Wood* v. *Wood*, 200 *Ga.* 796 (38 S. E. 2d, 545).

In the *Wilson* case, a suit for divorce was brought by a husband. The wife filed an answer and cross-action, in which she prayed for a divorce and alimony. On the trial the judge passed an order stating that it appeared she was non compos mentis, and appointing a guardian ad litem for her. Verdict and judgment were rendered granting a total divorce to both parties, authorizing each to marry again; but the question here presented was not raised or considered in that case. *Wood* v. *Wood* was also a suit for divorce by a husband. His suit was dismissed on general demurrer, and he excepted. This court said: "The general demurrer raises the question whether or not the plaintiff, since his petition shows that he has a guardian, can maintain this petition brought in his own name. Of course it is a well-settled rule of law that, if he is mentally incompetent and has a duly appointed guardian, ordinarily all actions in his behalf must be brought by the guardian. See Code, § 37-1003. It is contended that this rule does not apply, for the reason that the petition shows the guardian to have been a special guardian." This is the only part of the decision that is here material, and it clearly appears therefrom that the question now before us was not presented or dealt with in that case.

Nor was any such question involved in *Johnson* v. *Johnson*, 172 *Ga.* 273 (157 S. E. 689), relating to insanity at the time of marriage. We also exclude from the present consideration cases dealing with attacks upon marriages, made incidentally by heirs, next of kin, or other persons in asserting claims to property; as this was a plain suit for a divorce with no mention of property or a property right. For cases involving property rights, see *Crawford* v. *Crawford*, 139 *Ga.* 535 (77 S. E. 826); *Taylor* v. *Abbott*, 201 *Ga.* 254 (39 S. E. 2d, 471).

The rule that infants and other persons laboring under disability may be treated as wards of the court (*Sangster* v. *Toledo Manufacturing Co.*, 193 *Ga.* 685 (1), 690, 19 S. E. 2d, 723) could not enlarge the power of the guardian as conferred by statute; nor could the court itself speak for the ward as to whether he, the ward, wanted a divorce.

So far as related to the present question, the statute law of this State as to the authority of a guardian of an insane person was the same at the time of the decision in the *Worthy* case

(1867) as it is at this time (compare Code of 1863, §§ 1803, 1804, 1773, 1744); and, as already stated, we consider that decision as being controlling in the instant case.

It follows from what has been said that the court did not err in sustaining the demurrer and dismissing the petition. Although the decisions of the various courts are not in harmony on the question, the conclusion here reached accords with the weight of authority, in the absence of special statute governing such matter. Fourth National Bank in Wichita v. Diver, 131 Kan. 113 (289 Pac. 446, 70 A. L. R. 950, annotation, p. 964); Mohrmann v. Kob, 291 N. Y. 181 (51 N. E. 2d, 921, 149 A. L. R. 1274, annotation, p. 1284); Cohen v. Cohen, 73 Cal. App. 2d, 330 (166 Pac. 2d, 622); 27 C. J. S. 672, § 89; 17 Am. Jur. 290, § 272.

*Judgment affirmed. All the Justices concur, except Jenkins, C. J., who dissents, and Wyatt, J., who took no part in the consideration or decision of this case.*

JENKINS, Chief Justice, dissenting. Under the ruling of this court in *Worthy* v. *Worthy*, 36 *Ga.* 45, it is my opinion that a person who has been adjudged legally incompetent could, during a lucid interval, instruct his duly appointed guardian to bring a suit for divorce; and since such are the allegations in the instant case, it is immaterial that the ward might have subsequently lapsed into insanity, inasmuch as such a fact would not abate a suit legally instituted.