STERNBERG *v.* STERNBERG.

No. 16077. FEBRUARY 11, 1948.

R. M. Arnold, for plaintiff in error.

Hatcher & Hatcher, contra.

ATKINSON, Justice. (After stating the foregoing facts.) This is an action for divorce and alimony on the grounds of mental incapacity at the time of marriage and subsequent desertion. The action for alimony is not an independent suit based upon a bona fide separation of the parties, but is incidental to the divorce action. Thus, if the divorce action fails for any reason, the action for alimony must also fail. *Stoner* v. *Stoner*, 134 *Ga*. 368 (4) (67 S. E. 1030); *Brightwell* v. *Brightwell*, 161 *Ga*. 89 (2) (129 S. E. 658); *Meadows* v. *Meadows*, 161 *Ga*. 90 (2) (129 S. E. 659). Therefore, a controlling question is whether the next friend of a married woman may prosecute an action for divorce in behalf of such married woman, who was adjudicated to be mentally incompetent on October 22, 1935, married the defendant on November 7, 1941, while mentally incapacitated, and was deserted by the defendant on November 19, 1943, and where the mental incapacity is alleged to be permanent and incurable.

In *Worthy* v. *Worthy*, 36 *Ga*. 45 (91 Am. D. 758), the facts were similar to those of the present case, except the suit for divorce there was based on the ground of adultery, and the wife, who was suing by next friend, did not become insane until after she married the defendant. The trial court in that case as here overruled a general demurrer and the husband excepted. The question there for decision was whether a guardian or next friend

could, of his own will, institute and maintain such a suit. This court, in reversing the judgment overruling the demurrer, said in the opinion:

"Mrs. Worthy was at the institution of this suit a lunatic, and confined in the asylum near Milledgeville. It does not appear that, after her affliction at any time, she had a lucid interval; for if she had, and that being shown, and that during that interval she had directed suit for divorce to be brought, it should have been in her own name, without appearance by next friend. This suit is an indirect admission that she had no lucid interval, and for the purposes of this decision we will assume that the fact is so. If a guardian or next friend has the power insisted upon, we desire to learn whence it is derived. It certainly is not given by express provision of law, nor can it legitimately be deduced from the personal custody of the ward, which imposes certain duties on the guardian which he must perform. We confess that, notwithstanding the very able argument of the counsel for the father of Mrs. Worthy, we are unable to regard the right to sue for a divorce in any other light than as strictly personal to the party aggrieved. It is solely under the control of the person injured by the infidelity of the other; it is at the volition of that party whether a suit shall be begun and prosecuted or not. (See 2 Kent. Com., p. 100.) This principle laid down by Chancellor Kent, if correct, is decisive of the case. It is clear the wife gave no assent to the bringing of this suit; she is a confirmed lunatic, and from the first was incapable of volition. What though she should continue a confirmed lunatic, and the husband should continue by repeated adulteries to violate his marriage vow and duties?—the marriage cannot be dissolved at the instance and will of father, brother, or friend, whose feelings and delicacy may have been outraged by the conduct of the husband? Their will may not be her will; her will, intelligent will, only can be regarded by a court, not theirs. It may be inconvenient and greatly to be deplored that such a state of things exist. Nor can it be remedied by law, without destroying the safe foundation on which the continuance of the marriage relation reposes—that of its being personal to the party aggrieved. For the crime of adultery with which the husband is charged,

the law has provided punishment, and the father or friend may prosecute at their will—but whether, after gross and repeated infidelities, the wife will continue to regard him as her husband, and live with him as his wife, is for her decision only. Death only can dissolve the marriage relation without her consent, and no divorce can or ought to be had in this or any case but through the agency and will of the injured wife."

The above decision was followed in the recent case of *Phillips* v. *Phillips*, 203 *Ga.* 106 (45 S. E. 2d, 621), where it was held: "A suit for a divorce instituted by a guardian in behalf of a person who has been adjudicated insane cannot be maintained in this State; the right to bring and prosecute such an action being strictly personal, and not within the authority conferred by law upon a guardian."

While mental incapacity at the time of marriage was not, as in the present case, alleged as a ground of divorce in the cases of *Worthy* v. *Worthy* and *Phillips* v. *Phillips*, supra, yet these decisions were not based upon any absence of a valid ground of divorce, but were decided upon the principle that the right to maintain such action is strictly personal, and not within the authority conferred by law upon a guardian or next friend.

Counsel for defendant in error insist that, if there is a remedy for every right, and if mental incapacity at the time of marriage is a ground for divorce, then the next friend or guardian of a mentally incompetent person must under the facts of the present case be able to maintain such action. One answer to the above insistence is that it would be possible for a woman who was mentally incompetent at the time of marriage to become sane thereafter, in which event she could institute an action for divorce on the ground that she was mentally incompetent at the time of marriage. But if such person should never be restored to sanity, she would under the facts of the present case be in no worse position than an aggrieved spouse who became permanently and incurably insane after marriage. On the other hand, if a next friend should be allowed to maintain such action and if a divorce should be granted without adequate alimony, the aggrieved spouse might be left in far worse position than she is in at present. To illustrate: So long as the marriage relation stands, the law provides punishment for a husband who deserts

his wife, compels him to support her, and protects many other rights, all of which would be cut off if a divorce were granted.

A different ruling is not required by the decision in *Johnson* v. *Johnson,* 172 *Ga.* 273 (157 S. E. 689). The ·only ruling necessary to a decision of that case was, "where a guardian is appointed for a man who was insane at the time of his marriage and brings an equitable suit to have the marriage declared null and void upon the ground of the insanity of his ward at the time of the ceremony of marriage, such petition should be dismissed upon general demurrer;" and since no question as to the right of a guardian or next friend to maintain a suit for divorce was before the court, the further statement that a party who was insane at the time of the marriage, "or his guardian" appointed after the marriage, must resort to the remedy of divorce to have the contract annulled and the status destroyed, was obiter dictum.

On the question of the rights of the next of kin, after the death of a person who was mentally incompetent at the time of marriage, see *Taylor* v. *Abbott;* 201 *Ga.* 254 (3) (39 S. E. 2d, 471), and citations.

What is said above controls, adversely to the contentions of counsel for the defendant in error, the right of a next friend, under the circumstances of this case, to maintain an action for divorce on the ground of desertion.

It follows that the petition failed to set forth a cause of action, and the trial court erred in overruling the general demurrer that was interposed by the defendant husband.

*Judgment reversed. All the Justices concur, except Duckworth, P. J., who dissents; Bell, J., absent on account of illness; and Wyatt, J., who took no part in the consideration or decision of this case.*