No. 16,402.

Cox *v.* Armstrong, Administrator.
(221 P. [2d] 371)

Decided July 17, 1950. Rehearing denied August 21, 1950.

Messrs. DENIOUS & DENIOUS, Mr. WILBUR F. DENIOUS, JR., for plaintiff in error.

Mr. CHARLES J. SIMON, for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

REVIEW is here sought of a decree determining heirship in the estate of Ida May Cox who died intestate. A petition therefor had been filed in the estate by the administrator alleging that Mrs. John Heysinger was sister of deceased and sole heir, and a second petition had been filed by plaintiff in error, claiming to be husband and sole heir. The latter supported his case by certificate of marriage between himself and decedent

dated June 27, 1938, and the former by affidavit of heirship and judgment roll of an action in the district court of El Paso county, Colorado, which terminated in a decree annulling such marriage. Since the judgment of annulment was final, it is conclusive of the question of heirship, unless subject to attack for want of jurisdiction. *Craddock v. Palmer,* 91 Colo. 79, 11 P. (2d) 807.

From the record in the annulment suit it appears that decedent, Ida May Cox, brought suit for divorce against plaintiff in error in 1940 in the district court of El Paso county. Some months thereafter she was adjudicated a mental incompetent by the county court of said county, a conservatrix of her person and estate was appointed, and she was committed to a hospital where she remained until her death in 1946. Following such adjudication, plaintiff in error, who had appeared and answered plaintiff's complaint in the divorce action, filed motion to dismiss the action on the ground that plaintiff had been adjudged insane. Thereafter the conservatrix of the estate of the plaintiff, upon application to the county court by which she was appointed, was ordered and directed by the court to represent the interests of the plaintiff in the divorce action, and upon motion was by order substituted, as conservatrix, as party plaintiff therein. With leave of court she then filed amended petition alleging that Ida May Cox was mentally incompetent at the time of the marriage and was lacking in mental capacity to understand the nature and obligation of the marriage contract; that she owned certain property therein described, and that defendant had caused to be recorded claim of homestead exemption thereon, and praying that the alleged marriage be annulled, that defendant be required to quitclaim the property against which he had caused homestead exemption to be recorded and that said homestead entry be cancelled.

Plaintiff in error first contends that the divorce proceeding was void ab initio in that plaintiff was insane

at the time of its institution and that, being void, it could not be made valid by subsequent appearance of the conservatrix in her behalf. No precedent or convincing reason is shown for this contention, and we find none. Upon the appointment of a conservator it is his duty to represent the estate of his ward. If there are pending actions for the protection of the ward's estate, which in the opinion of the conservator have been inadvisedly brought, it is his duty to dismiss them. If, on the other hand, such proceedings are for the benefit of the ward, it is his duty to continue them. To hold that a conservator must dismiss a pending suit where, for the protection of his ward's estate, he must forthwith institute another suit, seeking the same relief, perhaps with loss of rights because of the delay, would promulgate a senseless and a dangerous rule. As stated in 28 American Jurisprudence, page 735, section 103, "The modern rule is that an insane person has a legal capacity to sue or be sued the same as a sane person, provided he has not been divested of the power to act for himself by having been adjudicated incompetent and having been placed under guardianship." In *Dunphy v. Dunphy,* 161 Calif. 380, 119 Pac. 512, plaintiff brought action for annulment of his marriage on the ground of intoxication at the time of the ceremony and consequent mental incompetence to contract the marriage. After answer made, a guardian ad litem was permitted to file an amended complaint seeking annulment on the ground that at the time of the marriage and ever since plaintiff had been of unsound mind. Permitting such amendment was held proper and judgment in favor of plaintiff was affirmed on appeal. A further answer to plaintiff's contention is that in the instant case the conservatrix by her amended petition set up a new claim which was to all effects and purposes a new suit instituted by her. The statute provides that an action for annulment may be joined with an action for divorce, but that does not make the two actions identical. The amendment was received

by the court without objection, plaintiff in error joined issue by filing answer thereto, and the court without objection tried and determined the new issue with plaintiff in error appearing at the trial. Under such circumstances objections to the pleadings cannot now be entertained.

■ Plaintiff in error further contends that an annulment proceeding may not be instituted by the conservatrix in behalf of her ward. This question does not appear to have been determined in this jurisdiction, but cases involving it are annotated in 70 A.L.R. 964, and 149 A.L.R. 1288. Under the majority rule, the conservator of an incompetent person may not bring a suit for divorce, but may bring a suit for annulment on the ground of insanity. The distinction is obvious. A divorce recognizes the validity of the marriage and requires a voluntary decision thereafter to terminate it. Such decision an incompetent person cannot make. An action for annulment is based, not on the voluntary decision of the plaintiff to dissolve the marriage, but on the fact of his lack of capacity to consummate it.

■ As we said in *Williams v. Williams*, 83 Colo. 180, 263 Pac. 725, "a marriage to a lunatic is absolutely void," and such was the rule of the common law. *Seabold v. Seabold*, 84 Ohio App. 83; *In re Estate of Gregorson*, 160 Cal. 21, 116 Pac. 60; Anno. 85 A.L.R. 1302.

The reasons supporting suit by a conservator to annul the marriage of his incompetent ward were well stated long ago in *Waymire v. Jetmore*, 22 Ohio St. 271: "Social order and public decency demand that the parties to a meretricious relation, in which the forms of marriage, apparently legal, seem to bind them, should be judicially relieved therefrom. This alone is sufficient cause for the interference of whatever tribunal possesses the adequate powers. But the succession of property and the legitimacy of inheritance, which the law regards with peculiar jealousy, furnish a no less controlling motive for such interference. The want of consenting capacity,

resulting from causes other than infancy, which is generally declared and the period thereof fixed by statute, is determinable in every instance by the testimony of witnesses only. Therefore, while the parties are *in esse,* and the witnesses accessible, it is of the greatest importance that every cloud which might obscure the succession or involve the inheritance, should be removed, rather than remain to foster future and consuming litigation. To this end a court of equity, in the exercise of its ordinary powers, will entertain jurisdiction, at the suit of the imbecile's guardian, to declare his marriage a nullity, as it does to order the surrender and cancellation of a forged or otherwise void instrument. The propriety of such jurisdiction is fully recognized by Chancellor Kent in *Wightman v. Wightman,* 4 Johns. Ch. 343, and by the Supreme Court of North Carolina, in *Crump v. Morgan,* 3 Ired. Eq. 91."

Under our statute, chapter 176, sections 136 and 137, '35 C.S.A., any conservator "may file a verified petition in the county court of his appointment for leave to bring an action to quiet the title to any real estate belonging to the estate of his * * * ward, or to remove a cloud from the title thereof, or to procure any legal or equitable relief whatsoever whereby the title to such real estate may be made marketable. * * *." One of the prime purposes of an action for annulment is the protection of the property of the ward; that purpose specifically appears in the amended petition before us, and we think such an action was well within the contemplation of the legislature in the enactment of our statute. *Fourth National Bank v. Diver,* 131 Kan. 113, 289 Pac. 446, 70 A.L.R. 950, contains a statutory construction of the same purport.

It finally is contended that the appointment of the conservatrix is invalid on the ground that the guardian ad litem failed to examine, or even require the presence of, the complainant before the commission. Assuming that plaintiff in error may now challenge such

appointment, there is no merit to the contention. *Hawkyard v. People*, 115 Colo. 35, 169 P. (2d) 178.

The judgment is affirmed.

MR. JUSTICE MOORE does not participate.