KANNER, Chief Judge.
Suit was instituted for decree of divorce by the husband. Subsequent to the interposition of an answer by the wife, the husband was adjudged insane, and thereupon a guardian ad litem was appointed to represent him in this action. The guardian, through motion, sought to stay the suit because of the mental incompetency of the husband. The chancellor denied the motion and that ruling created the reason for this interlocutory appeal.
The sole question confronting this court is whether a guardian ad litem may prosecute a divorce action to conclusion for a plaintiff who has become insane after the bringing of the action.
There is no common law for divorce in this country; divorce is the creature of and is governed by legislation. The rule is well established in the United States by the overwhelming weight of authority that a guardian of a mentally incompetent person cannot bring and maintain an action for divorce on behalf of his insane ward unless there has been legislative enactment to authorize such procedure. 17 Am.Jur., Divorce and Separation, section 306, p. 478; Annotation, 70 A.L.R. 964; Mohrmann v. Kob, 1943, 291 N.Y. 181, 51 N.E.2d 921, 149 A.L.R. 1274; Annotation, 149 A.L.R. 1284; Annotation, 19 A.L.R.2d 182; 27 C.J.S. Divorce § 89, p. 672; and State ex rel. Quear v. Madison Circuit Court, 1951, 229 Ind. 503, 99 N.E.2d 254. Florida has- no statute authorizing the appointment of a guardian to initiate nor to prosecute a suit for divorce on behalf of an insane ward.
The majority rule as enunciated is deeply embedded in the concept that a marriage relationship is exclusively personal and that it may be dissolved only by the voluntary consent and the comprehending exercise of the will of an injured spouse. No matter what the nature and the number of grievous wrongs committed by one spouse against another, these of themselves cannot wreak the destruction of the marriage status. The marital wrongs create only the basis for the divorce action. It is the will and the decision of the injured one that invokes the judicial process. The mind of an insane person cannot be guided by a guardian through the course of a divorce litigation to its conclusion. Necessarily, the outcome of such an action is importantly contingent upon the competent understanding and participation of the aggrieved party. As a part of the basic concept, there is woven into the marriage fabric, regardless of the marital grievance, the right by the aggrieved spouse to forgive or condone; even the spouse who is guilty of marital wrongdoing has the right of condonation as a defense. For condonation to be .effected, since the marriage *200 status is so completely personal, the free exercise of the injured spouse’s will and the prerequisite of comprehension are required. 17 Am.Jur., Divorce and Separation, section 308, pp. 479, 480; Birdzell v. Birdzell, 1885, 33 Kan. 433, 6 P. 561; Shenk v. Shenk, 1954, 100 Ohio App. 32, 135 N.E.2d 436; Sternberg v. Sternberg, 1948, 203 Ga. 298, 46 S.E.2d 349; Johnson v. Johnson, 1943, 294 Ky. 77, 170 S.W.2d 889; and Mohler v. Shank’s Estate, 1895, 93 Iowa 273, 61 N.W. 981, 34 L.R.A. 161.
Florida chose to align herself with the other jurisdictions which have adopted the majority rule. This was through the case of Scott v. Scott, Fla.1950, 45 So.2d 878. In accord with the premise expressed by the majority rule, answering the certified question, “May an action for divorce be instituted and maintained in this State by a guardian in behalf of a ward who prior to the time of the institution of suit has been duly adjudged to be mentally incompetent?”, the Florida Supreme Court concluded:
“Being of the opinion that the majority rule on the subject is more consonant with equity and reason, it follows that the question certified to this court should be answered in the negative and that the cause should be remanded for the entry of an appropriate order in accordance with this opinion.”
The cases which produced the majority rule are principally cases in which, at the time the divorce action was instituted, the spouse seeking the divorce was mentally incompetent. This was so in the Florida case of Scott v. Scott; but it should be noted that the certified query answered in the negative by the court in that case employed both the words “instituted” and “maintained”.
An outstanding case, Phillips v. Phillips, 1947, 203 Ga. 106, 45 S.E.2d 621, was an 'action for divorce brought by a guardian of the husband, an insane person, on the ground of adultery committed by the wife prior to the husband’s insanity. The complaint charged that, prior to insanity, the ward expressed the intention and desire of getting a divorce and that at the time of the filing of the suit and during a lucid interval when the ward was capable of comprehending the nature of the action, he again expressed the same intention and desire. It was further alleged that the suit was instituted pursuant to the ward’s direction, desire, and will at the time of the filing of the suit. On demurrer directed against the complaint, the Supreme Court of Georgia held that a guardian of an insane person cannot prosecute an action for divorce on behalf of his ward. The rationale of the court’s holding was an affirmation of that expressed primarily by other jurisdictions in the majority rule group.
Emphasized in the cases upon which the majority rule is premised is the personal right to the injured spouse of con-donation or forgiveness. We must recognize that a mentally competent aggrieved spouse cannot predict with absolute finality that, at some point during a divorce action, he will not condone the wrong upon which he has based his complaint and decide to continue the marriage, despite the wrong, for personal reasons, such as religious, social, or financial, or because of consideration of children, or for other reasons personal to himself. Then how could a guardian determine condonation, forgiveness, or reconciliation?
We may observe that judicial thinking and pronouncements in divorce actions have uniformly reflected the solemn protective regard which the state holds toward the continuance and preservation of the marital status. They reflect also the public policy that a marriage relationship, as the foundation of home and family, should not be abrogated without adequate cause. See Martin v. Martin, Fla. App.1958, 102 So.2d 837. In Florida, these protective attitudes are supported by legislative regulation. The Legislature’s re *201 cent expression of this purpose may be seen in its enactment prescribing an ad interim period that precludes the taking of testimony on the merits until thirty days after the case is at issue except at the discretion of the judge for good cause shown. Section 65.20, F.S.A. In common everyday parlance, this interim period is sometimes referred to as a “cooling off” period. The object of this waiting interval is to afford a time element for con-donation or reconciliation; indeed, such can be effected at any moment up to the actual entry of the final decree. In keeping with the public concern that marriage as an institution should be preserved, the courts are not only warmly receptive to the personal prerogative of forgiveness or reconciliation, but encourage it.
Many estrangements are temporary, and time heals them. The writer of this opinion, in his experience as a circuit judge, found in many instances that the wronged spouse availed himself of the right to forgiveness and reconciliation, even in some cases where reconciliation seemed hopeless. This is the privilege, without question, of one who is not incompetent.
Where an injured spouse is adjudged insane during the pendency of a divorce suit, although consent having been expressed by him through his institution of the action prior to adjudication of mental incompetency, he nevertheless lacks the will to exercise the all important prerogative of condonation; he lacks the will to effect a reconciliation; and he lacks the comprehension necessary to participate in prosecution of the action begun. In short, he lacks the will to proceed with or desist from the divorce action instituted or to exercise the right of condonation. We are convinced, therefore, that since a guardian is precluded from initiating and maintaining a divorce action for an insane person because an insane person lacks the power of consent, a guardian is likewise precluded from prosecuting a divorce action for a person who becomes insane subsequent to the filing of the suit.
The motion to stay the divorce action should have been granted. Consequently, the cause is reversed for proceedings not inconsistent with this opinion.
Reversed.
ALLEN, J., and DICKINSON, JOHN, Associate Judge, concur.