[No. 39449.   En Banc.   December 18, 1969.]

WILLIAM H. JONES, as *Guardian, Respondent*, v. LISA MINC, *Appellant.*\*

Bill Lanning and Philip Mahoney, for appellant.

John J. Keough and David L. Williams (of Colvin & Williams), for respondent.

FINLEY, J.—This law suit was commenced by the guardian of the respondent, Richard G. Jones, an incompetent, to terminate the marriage of respondent and appellant by divorce or annulment. The trial court awarded respondent an annulment, and in the alternative a decree of divorce. This appeal followed.

Richard G. Jones became a widower on January 28, 1964. He was then 82 years of age. He had been substantially dependent upon his wife in the conduct of his daily affairs.

\*Reported in 462 P.2d 927.

His friends and neighbors described his conduct as confused after the death of his wife. He would lock himself out of his home. He was at times unaware of his wife's death, and was unable to handle his financial affairs.

Several months after the death of his wife he became acquainted with Lisa Minc. She quickly became his housekeeper, and promptly became involved in his affairs. A marriage license was issued to Jones and "Lisa Mintz" on September 8, 1964. He quitclaimed his home—which he owned free and clear—to the appellant, gave her some $12,000 in "H" bonds, and permitted the transfer of his savings account passbooks to her. At that time he was under the impression that he was married to the appellant and the quitclaim deed to his home so recites.

Mr. William H. Jones, a long-time friend of Richard Jones and administrator of his first wife's estate, discovered the indicated transfers of property and, in administering the community interest of the first wife, he pressed for and achieved the return of the aforementioned assets. Shortly thereafter, on November 9, 1964, another marriage license was taken out and a ceremony was actually performed the next day.

A legal guardianship of the person and property of Richard Jones was then consummated, naming Mr. William H. Jones guardian of the person, and the Seattle-First National Bank guardian of the property.

Appellant Lisa Minc obstructed the attempts of the guardian to safeguard the interests of Richard Jones and conducted a persistent and largely successful campaign to insulate him from all exterior influences. She accompanied him whenever he left the house, intercepted telephone calls from his friends, and attempted to conceal his whereabouts from his legal guardian.

Appellant's activities, which under other circumstances may have been merely suspicious, acquire a sinister cast in the light of appellant's previous marital history. Lisa Minc had married Mr. Irving M. Rulison in California in 1961. They subsequently moved to Seattle where she kept Mr.

Rulison, aged 70 and a chronic alcoholic, in a room in the basement of their rented home. She admitted to neighbors that she had married Rulison for his money. He was found in May, 1963, in a dying condition, unkempt and extremely emaciated, surrounded by liquor bottles, in the basement room. The cause of his subsequent death was malnutrition, accompanied by chronic alcoholism.

Appellant was also convicted of petty larceny in California, and was tried and then retried for the murder of a previous employer. Both murder trials were terminated by a hung jury. Richard Jones was not told of any of the above facts prior to his marriage.

The trial court found that at the time of his marriage the respondent was not imbecilic, feeble-minded, or insane, within the meaning of RCW 26.04.030. It further found that he was capable of understanding the marriage ceremony and contract. However, the trial court found that the marriage was contracted by appellant for the sole purpose of obtaining respondent's property,[1] and while respondent was under the complete domination of the appellant and was influenced by her fraudulent misrepresentations. It found that the domination and fraud continued after the marriage and that, although there had been voluntary cohabitation by the respondent after disclosure of the factual misrepresentations, the domination and control of the appellant over the respondent's will never ceased.

There are numerous assignments of error. Several of these have not been argued in appellant's brief and will not be further considered. *State v. Davis*, 60 Wn.2d 233, 373 P.2d 128 (1962).

The remaining assignments raise four issues: (1) the propriety of the property settlement made in the instant case; (2) the jurisdictional standing of a guardian to seek annulment or divorce in behalf of his ward; (3) the effect of the subsequent death of the ward upon the jurisdiction of this court over the subject matter of the marriage; and

---

[1] This finding was supported by an admission of the appellant to that effect in addition to the ample evidence of a fraudulent scheme.

(4) the quantum of evidence required, and the elements involved, in the assertion of a fraud upon one whose competence is simultaneously brought into question.

■ The first issue is dependent upon the court's power to act. In other words, if a divorce was a proper remedy for the asserted wrong, the property of both parties was within the jurisdiction of the trial court. RCW 26.08.110. The settlement made was one within the broad discretion of the trial court in such matters. *See Mumm v. Mumm,* 63 Wn.2d 349, 387 P.2d 547 (1963). On the other hand, if annulment was the proper remedy, restoration of the status quo ante, with such equitable modifications as were within the sound discretion of the trial court, would be proper. In view of the foregoing, we find no abuse of discretion and no merit in the first issue raised by the appellant.

■ The second issue raises problems of some difficulty. It is generally held that a guardian has no standing to bring an action for the divorce of his ward without specific statutory authorization. The action for annulment is not so limited, it being relatively common to allow the guardian standing to bring such an action. *See* Annot. 6 A.L.R.3d 681 (1966). To the extent that the grounds for divorce express injuries personal to the parties to the marriage, while those of annulment represent legal impediments to the creation of a valid marital relation, such a rule is sound.

Prior to the enactment of the Divorce Act of 1949, the problem in this case would have been rather easily resolved as the proper relief for one in the respondent's position would have been an annulment. Appellant urges, however, that in *Saville v. Saville,* 44 Wn.2d 793, 271 P.2d 432 (1954), this court construed RCW 26.04.130,[2] dealing with voidable marriages, and a section of the Divorce Act of

---

[2] "26.04.130 Voidable marriages. When either party to a marriage shall be incapable of consenting thereto, for want of legal age or a sufficient understanding, or when the consent of either party shall be obtained by force or fraud, such marriage is voidable, but only at the suit of the party laboring under the disability, or upon whom the force or fraud is imposed."

1949, RCW 26.08.020,[3] as to make divorce the *exclusive remedy* for marriages voidable "[w]hen either party to a marriage shall be incapable of consenting thereto, for want of legal age or a sufficient understanding, or when the consent of either party shall be obtained by force or fraud . . ." RCW 26.04.130.[4]

The remedy of annulment is not generally favored. Its

---

[3] RCW 26.08.020(1) was the main section which the court in *Saville* relied upon.

26.08.020 Grounds for divorce. Divorce may be granted by the superior court on application of the party injured for the following reasons:

(1) When the consent to the marriage of the party applying for the divorce was obtained by force or fraud, and there has been no voluntary cohabitation after the discovery of the fraud, or when either party shall be incapable of consenting thereto, for want of legal age or a sufficient understanding.

(2) For adultery on the part of the wife or of the husband, when unforgiven, and the application is made within one year after it shall have come to the knowledge of the party applying for a divorce.

(3) Impotency.

(4) Abandonment for one year.

(5) Cruel treatment of either party by the other, or personal indignities rendering life burdensome.

(6) Habitual drunkenness of either party.

(7) The neglect or refusal of the husband to make suitable provision for his family.

(8) Imprisonment in a state or federal penal institution if complaint is filed during the term of such imprisonment.

(9) A divorce may be granted to either or both parties in all cases where they have heretofore lived or shall hereafter live separate and apart for a period of five consecutive years or more, without regard to fault in the separation.

(10) In all cases where the defendant, at the time of commencement of the action, is suffering from chronic mania or dementia, established by competent medical testimony to have existed for at least two years prior to the filing of the complaint, such insanity shall be the sole and exclusive ground upon which the court may in its discretion grant a divorce.

[4] *Saville* also suggested, in dictum, that there was one exception in that marriages voidable under RCW 26.04.030 (*i.e.*, one of the parties was insane, an habitual criminal, a common drunkard, et cetera) were still subject to annulment. At least one commentator upon the decision concluded that the exception was illusory in that the defects were not normally grounds for annulment without concealment, and that such

growth in the state of New York as a substitute for divorce —occasioned by that state's very limited grounds for divorce—exerted a warping effect upon the law throughout the United States. Annulments have been condemned as bastardizing children, cutting wives off without alimony and providing quick marriage terminations without adequate residence requirements. Many of these criticisms are no longer valid. Statutory relief such as RCW 26.08.060 insures that the issue of the marriage will not be bastardized.

Further, the statement of the courts' jurisdiction as to persons and property and the breadth of its discretion contained in RCW 26.08.110 makes no distinction between divorce and annulment for the purposes of property settlement and custody, care, and support of minor children. The statute has been construed to authorize the grant of alimony in annulment cases, *Jones v. Jones,* 48 Wn.2d 862, 296 P.2d 1010, 54 A.L.R.2d 691 (1956), as well as in divorce. *Loomis v. Loomis,* 47 Wn.2d 468, 288 P.2d 235 (1955).

In light of the course of the legislative enactment and decisional law in this state, a policy regard for the interests of the wife or children for financial or familial reasons would appear to show no further reasons, other than the residence and waiting period requirements, for preferring divorce to annulment as the proper remedy for a marriage voidable because the consent thereto was by force or fraud. *See* H. Clark, Domestic Relations §2.15, n. 7 (1968).

However, *Saville,* in determining that divorce was the exclusive remedy for dissolving marriages which are voidable under RCW 26.04.130, did not merge that statute into the statute dealing with grounds for divorce, RCW 26.08.020. RCW 26.08.020 contains a number of different bases for a claim for relief, as to which divorce is the proper remedy. Most of the sections of RCW 26.08.020 deal with personal injuries arising after the establishment of a

concealment would be fraudulent rendering divorce the exclusive remedy. *See* Rieke, the Divorce Act of 1949—One Decade Later, 35 Wash. L. Rev. 16, 17 (1960). In any event, there is no argument that the marriage would be voidable under RCW 26.04.030.

valid marital relationship. Consequently, it would be inappropriate for a guardian to seek to terminate a marriage validly entered into. However, RCW 26.04.130 deals with infirmities amounting to a defect in the marriage contract from the outset. These infirmities are not personal injuries arising after the commencement of the marital relationship, but rather inhere in the lack of consent to the marriage and are, thus, a legal impediment to the validity of the marriage itself.

Just because the remedy is now divorce does not mean that the policy reasons for allowing guardians to seek an annulment do not also apply in this situation.

Under the guardianship statute, the guardian has power to represent his ward in all matters, and to sue and be sued. RCW 11.92.060. RCW 26.04.130 authorizes the voiding of those marriages which fall under it "at the suit of the party laboring under the disability, or upon whom the force or fraud is imposed." It would be a strange paradox if the very elements which made the ward incapable of consenting to the marriage should also act to deprive him of his remedy or relief from the consequences of his marital relationship.

If a guardian had the standing under Washington law prior to *Saville* to challenge a marriage for those infirmities, we find nothing in the reasoning or facts of *Saville* which would indicate an intent to deprive the guardian of standing to assert the same infirmities in an action for divorce. There is nothing in the *Saville* case indicating that the guardian's action in behalf of the ward for annulment should not be assertible after *Saville* as an action for divorce.

This analysis is buttressed by *In re Estate of Romano,* 40 Wn.2d 796, 246 P.2d 501 (1952), which concerned collateral attack upon a voidable marriage after death. In dealing with the possibility of an attack by the guardian during the lifetime of the injured party, the court stated in dicta:

> We need not decide whether, under similar circumstances, a collateral attack would be permitted in this state. . . . There was ample time during Romano's lifetime for his general guardian or some next friend to

make a direct attack, in Romano's behalf, upon the validity of this marriage.

40 Wn.2d at 806, 246 P.2d at 507.

We hold accordingly that in those situations in which the guardian would have had at least a colorable action for the annulment of his ward's marriage prior to *Saville* he is now entitled to bring an action for divorce. In this case, the guardian had the requisite standing to bring this action for divorce in behalf of his ward.

■ It follows that the trial court had jurisdiction over the parties and the subject matter of the marriage at the time the judgment was entered. Subsequently, and pending the appeal to this court, Richard G. Jones died. Consequently, this jurisdiction terminated upon the death of one of the parties to the marital relationship.

> [I]t is the well-settled law in this state that a divorce action abates on the death of either party, and, except where the rights of third parties are involved in the decree itself, the court is without authority to vacate a decree of divorce after the death of one of the parties.

*Osborne v. Osborne,* 60 Wn.2d 163, 165, 372 P.2d 538, 540 (1962). *See also Crockett v. Crockett,* 27 Wn.2d 877, 181 P.2d 180 (1947); *Dwyer v. Nolan,* 40 Wash. 459, 82 P. 746 (1905).

This court is without jurisdiction to examine the grounds asserted as a basis for the decree beyond that necessary to premise the standing of the guardian to sue. Accordingly, we express no opinion about the quantum of evidence required or the elements involved in the assertion of a fraud upon one whose competence is simultaneously brought into question. Neither do we express any opinion about the failure of the complaint to allege residence of the plaintiff for 1 year, except to note that the failure to plead residence did not affect the jurisdiction of the trial court. *Hammond v. Hammond,* 45 Wn.2d 855, 278 P.2d 387 (1954).

Because, as indicated, this court lacks jurisdiction for appellate review, the decision of the trial court must stand. It is so ordered.

WEAVER, HAMILTON, HALE, and McGOVERN, JJ., concur.

ROSELLINI, J. (concurring)—I concur only in the result because a divorce action abates on the death of either party. *Osborne v. Osborne,* 60 Wn.2d 163, 372 P.2d 538 (1962).

HUNTER, C. J. (dissenting)—I dissent. The majority recognizes the general rule that a guardian is without standing to maintain a divorce in behalf of his ward. It carves out an exception, however, on the theory that the ground for divorce in the instant case is the same ground upon which an annulment of a voidable marriage could have been maintained prior to the Divorce Act of 1949, RCW 26.08.020; and that the policy for the rule which denies a guardian the standing to institute a divorce action in behalf of his ward on this ground should not apply. Moreover, the ground for the divorce here represents legal impediments to the marriage rather than for injuries personal to the parties to the marriage. I disagree.

The reasoning of the majority meets only a part of the policy supporting the general rule. The rule that a guardian may not maintain an action for divorce unless authorized by statute is premised on the very personal nature of the marital relationship. *Pulos v. Pulos,* 140 Cal. App. 2d 913, 295 P.2d 907 (1956); *Cox v. Armstrong,* 122 Colo. 227, 221 P.2d 371 (1950); *Sternberg v. Sternberg,* 203 Ga. 298, 46 S.E.2d 349 (1948). Also see Annot., 6 A.L.R.3d 681 (1966). The policy for the rule is also founded upon the fact that there are no marital offenses which of themselves work a dissolution of the marital relationship. *Scott v. Scott,* 45 So. 2d 878 (Fla. 1950). Rather, the courts recognize that in the injured spouse always rests the right to forgive, excuse, or pardon for religious reasons or any other motive. As stated in *Cohen v. Cohen,* 73 Cal. App. 2d 330, 166 P.2d 622 (1946) at 335:

> It was the privilege of appellant as the allegedly aggrieved party to decline to seek a divorce, and regardless of the motives behind her attitude it was not within the province of her counsel, her guardian or the court to force one upon her.

There is an underlying principle in the law to preserve the marriage where possible. In Washington we applied this principle to a voidable marriage in the case of *In re Hollopeter*, 52 Wash. 41, 47, 100 P. 159 (1909):

There being no statute permitting a parent to maintain an action to annul the marriage of a child in this state, and considering the policy of the law to sustain, rather than abrogate, the marriage relation, we are constrained to hold that the parents cannot maintain their action.

It must also be observed that divorce is purely statutory in origin, and unrecognized in common law. Therefore, the court has no jurisdiction to grant relief unless authority to do so can be found in Washington statutes. *Palmer v. Palmer*, 42 Wn.2d 715, 258 P.2d 475 (1953); *Ruge v. Ruge*, 97 Wash. 51, 165 P. 1063 (1917); see, *Arneson v. Arneson*, 38 Wn.2d 99, 227 P.2d 1016 (1951).

I do not find that our divorce statutes specifically or impliedly grant a guardian authority to maintain an action of divorce. The Divorce Act of 1949, *supra*, relating to grounds for divorce, makes no mention of guardianship authority but states very simply, "Divorce may be granted by the superior court on application of the party injured for the following reasons: . . ." Moreover, speaking of the Divorce Act of 1949, this court in *Arneson v. Arneson*, *supra*, stated at 101:

Nowhere in the act is the court empowered to exercise the prerogatives peculiar to other statutory proceedings. One ready test of a proper limitation on the jurisdiction of the court, in a given case, can be applied by determining who are the necessary and/or proper parties to the action.

The spouses are made parties to a divorce action by due process, and the state is made one by statute. The children are not parties, but, as a subject of the action, they have been made the chief concern of both the legislature and the courts. Other persons can not be made parties to the action by any statutory form of notice, nor can they intervene therein.

The plaintiff was limited by our ruling in *Saville v. Saville*, 44 Wn.2d 793, 796, 271 P.2d 432 (1954), to an action

for divorce under the facts of this case. In view of the policy of the law to protect and promote the marital relationship, the general rule that a guardian cannot maintain an action to dissolve a marriage by divorce, in the absence of express statutory authority, should apply. The guardian was therefore without standing to maintain this action either for an annulment or divorce. The trial court was without jurisdiction to enter judgment granting "an absolute decree of annulment or, in the alternative, an absolute decree of divorce."

The judgment should be reversed and the cause dismissed.

HILL and NEILL, JJ., concur in the result of the dissent.

---

February 6, 1970. Petition for rehearing denied.